Charles S. LiMandri (CA Bar No. 110841)
Paul M. Jonna (CA Bar No. 265389)
FREEDOM OF CONSCIENCE DEFENSE FUND
P.O. Box 9520
Rancho Santa Fe, CA 92067
Tel: (858) 759-9948
cslimandri@limandri.com
*Attorneys for Defendants the Center for Medical Progress, BioMax Procurement Services, LLC, and David Daleiden*

Perlette M. Jura (CA Bar No. 242332)
Jennifer K. Bracht (CA Bar No. 300385)
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
Tel: (213) 229-7121
pjura@gibsondunn.com
jbracht@gibsondunn.com
*Attorneys for Non-Party Dr. Deborah Nucatola*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PLANNED PARENTHOOD FEDERATION OF AMERICA, INC., et al.,<br><br>    Plaintiff,<br><br>vs.<br><br>THE CENTER FOR MEDICAL PROGRESS, et al.,<br><br>    Defendants. | Joint Stipulation on Unresolved Matters in Support of Motion to Compel Compliance with Document Subpoena Served on Deborah Nucatola in N.D. Cal Case No. 3:16-CV-00236<br><br>C.D. Cal. L.R. 45-1, 37-2<br><br>Written Disc. Cutoff: Dec. 31, 2019<br>Motion to Compel Cutoff: Jan. 14, 2019<br>Fact. Disc. Cutoff: Mar. 31, 2019<br>Pretrial Conf.: Sep. 9, 2019<br>Trial Date: Sep. 30, 2019 |

# TABLE OF CONTENTS

OBJECTIONS AND RESPONSES AT ISSUE ........................................................ 3

CMP'S CONTENTIONS ........................................................ 8

DR. NUCATOLA'S CONTENTIONS ........................................................ 13

## CMP'S INTRODUCTORY STATEMENT

Defendant the Center for Medical Progress ("CMP") moves this Court for an order compelling Non-Party Deborah Nucatola to produce documents responsive to CMP's subpoena document requests nos. 8 and 10. Those documents are key to CMP's defenses in litigation in the Northern District of California. In that litigation the plaintiffs directed CMP to obtain the documents from Nucatola herself (a former employee), who now refused to produce them.

In good faith, CMP has narrowed the time period covered by the requests and seeks that Nucatola only search for documents in her personal possession and in the possession of her counsel. Nucatola refuses without any legitimate basis. This Court should order production.

## DR. NUCATOLA'S INTRODUCTORY STATEMENT

Defendants' filing of this motion in the Central District of California directly violates Federal Rule of Civil Procedure 37(a)(2), which dictates that motions to compel discovery from non-parties are to be "made in the court where the discovery is or will be taken." Here, that court is the District of Columbia, the very place that Defendants selected for production. *See* Ex. 3. As such, this Court lacks jurisdiction to decide this motion and should deny Defendants' motion on this basis alone. *See, e.g.*, *Youngevity Int'l Corp. v. Smith*, No. 16-cv-704, 2017 WL 6418961, at *3 (S.D. Cal. Dec. 15, 2017) ("Absent a transfer, only a court in the district of the place of compliance has jurisdiction to compel compliance [with a] subpoena.") (citing cases and holding that as the subpoenas identified the places of compliance in Illinois, Utah, Indiana, Maryland, and Massachusetts, the court lacked jurisdiction to enforce the subpoenas); *Rembrandt Patent Innovations, LLC v. Apple Inc*, No. C 14-05093 WHA, 2016 WL 427363, at *2 (N.D. Cal. Feb. 4, 2016) (holding that the court lacked jurisdiction to compel discovery from subpoenas served on non-parties that identified the place of compliance as New York or Washington, D.C.).

Should the Court nevertheless reach the merits of Defendants' motion (which it should not), Dr. Nucatola, a non-party to the litigation, has already been subjected to an undue and substantial burden by Defendants. Even though she is not a party to the litigation, and is no longer an employee of one of the Plaintiffs, Defendants served her with a subpoena containing ten onerous, overly broad, and harassing discovery requests. *See* Ex. 3. Dr. Nucatola has even gone so far as to search through

2

her *personal* (i.e., non-work, which she no longer has access to) emails and computer to satisfy Defendants' October 23, 2018 subpoena to Dr. Nucatola to produce documents (the "Subpoena"). Defendants concede that as to 8 of the 10 Requests for Production in the Subpoena (the "Requests"), they have no objections to Dr. Nucatola's responses and acknowledge that she does not have any information in her possession relevant to this lawsuit. As for the two Requests that are the subject of this dispute, Request Nos. 8 and 10, Dr. Nucatola has likewise confirmed that she possesses no responsive documents on her personal computer or in her emails. Nevertheless, Defendants are now trying to force her to compel third parties, including her counsel, to search for files in their possession. This is not what was agreed to during the parties' meet and confer and it goes more than a shade too far—intruding on core privilege and confidentiality protections.

Our justice system places limits on the burdens that can be imposed on non-parties, especially when it comes to abusive discovery practices. *See U.S. v. Columbia Broadcasting Sys.*, 666 F.2d 364, 371 (9th Cir. 1982) ("Nonparty witnesses are powerless to control the scope of litigation and discovery, and should not be forced to subsidize an unreasonable share of the costs of a litigation to which they are not a party."). Dr. Nucatola has already done more than is required of her. Defendants' motion, which asks this Court to disregard confidentiality, privilege, and recognized limits on third party discovery, is unsupported by the facts and the law, and goes well beyond what the parties agreed to during their meet and confer. On their face, the documents sought implicate material protected by the attorney-client privilege or work product doctrine, or the rules and practices of the Energy and Commerce Committee of the House of Representatives. Dr. Nucatola has already confirmed that she does not control any Plaintiff records and has conducted a search of her personal email and computer. Defendants' motion should be denied.

## OBJECTIONS AND RESPONSES AT ISSUE

### General Objections

These general objections ("General Objections") apply to and are incorporated by the Respondent into each specific response to the Subpoena. Each set of specific Objections and Responses to the Subpoena is made without waiving these General Objections.

1. By agreeing to produce documents in response to a specific Request, the Respondent

1  represents only that responsive documents will be produced if they exist and can be located through

2  a reasonable inquiry and diligent search, and are not otherwise protected from disclosure.

3      2.      No objection or limitation, or lack thereof, in these Objections and Responses shall

4  be deemed an admission by the Respondent as to the existence or non-existence of information,

5  documents, or other materials.

6      3.      The specific Objections and Responses set forth below are based on the Respondent's

7  interpretation of the language used in the Subpoena, and the Respondent reserves the right to amend

8  or supplement these Objections and Responses in the event Defendants assert an interpretation

9  different from the Respondent's interpretation.

10     4.      The Respondent's Objections and Responses to the Subpoena are based on a

11  reasonable inquiry and current knowledge as of the date these Objections and Responses are made.

12  Further investigation may reveal additional facts or information that could lead to additions to,

13  changes in, and/or variations from the Objections and Responses set forth herein.  Without in any

14  way obligating the Respondent to do so, the Respondent expressly reserves the right to amend,

15  supplement, correct, clarify, or modify the Objections and Responses set forth herein.

16     5.      The Respondent objects to the Subpoena, including the Definitions and each specific

17  Request therein, to the extent they purport to impose requirements that are inconsistent with, or

18  beyond those contemplated by, the Federal Rules of Civil Procedure (the "Federal Rules"), the Civil

19  Local Rules of the United States District Court for the Northern District of California ("Local

20  Rules"), any other applicable rule or law, or any order entered in or applicable to the Action.  The

21  Respondent will construe and respond to the Subpoena in accordance with the requirements of the

22  Federal Rules, the Local Rules, any other applicable rule or law, and all orders applicable to the

23  Action.

24     6.      The Respondent objects to the Subpoena, including the Definitions and each specific

25  Request therein, to the extent that it would impose an undue burden on the Respondent, particularly

26  as a non-party, to respond in the form of an excessive expenditure of time and money.

27     7.      The Respondent objects to the Subpoena, including the Definitions and each specific

28  Request therein, to the extent that it seeks documents or information that are not relevant to the claims

1  and defenses in the Action.

2       8.    The Respondent objects to the Subpoena, including the Definitions and each specific

3  Request therein, to the extent it purports to call for the production of documents or information that

4  is of marginal relevance such that its probative value is substantially outweighed by the burden

5  imposed on the Respondent, particularly as a non-party, in having to search for and provide such

6  documents or information.

7       9.    The Respondent objects to the Subpoena, including the Definitions and each specific

8  Request therein, to the extent it purports to require preservation and/or production of electronically

9  stored information that is not stored on active systems, but is stored on systems, backup tapes, and

10  other media that are no longer part of normal business operations.  Requests that seek to require the

11  Respondent to search such sources are overly broad and unduly burdensome due to the cost

12  associated with searching, preserving, and accessing these data sources.

13       10.    The Respondent objects to the Subpoena, including the Definitions and each specific

14  Request therein, to the extent it purports to require the production of documents or information that:

15  (i) are within the custody, control, or possession of the parties to the Action; (ii) are publicly

16  available; or (iii) are unreasonably cumulative, duplicative, or otherwise obtainable from some other

17  source that is more convenient, less burdensome, or less expensive.

18       11.    The Respondent objects to the Subpoena, including the Definitions and each specific

19  Request therein, to the extent it purports to require production of documents that are subject to a right

20  of privacy and/or privilege, immunity, or obligation of confidentiality, including, without limitation,

21  the attorney-client privilege, the attorney work-product doctrine, the rules and practices of the Select

22  Investigative Panel of the Committee of Energy and Commerce, or any other legally recognized

23  privilege, immunity, exemption, or protection against disclosure.  Any inadvertent disclosure of any

24  privileged information to Defendants shall not be deemed or construed to constitute a waiver of any

25  privilege, any other doctrine against disclosure, or the Respondent's right to object to the use of any

26  document inadvertently disclosed.  The Respondent reserves the right to demand that Defendants

27  return to the Respondent any privileged document inadvertently produced.  The Respondent does not

28  intend to waive any applicable privilege through the production of any documents or information in

response to the Subpoena.  The review and production of any documents or information in response to the Subpoena will be conducted by counsel or attorneys supervised by counsel, and thus any production of privileged documents or information would be inadvertent.

12.     Notwithstanding any agreement between the parties in the Action or the terms of any protective order, the Respondent objects to the use or disclosure of any documents that the Respondent may produce in response to the Subpoena in any lawsuits other than the Action.  The Respondent makes any production on the express condition that any documents that the Respondent may produce in the Action will not be used or disclosed in any other lawsuit or proceeding without first providing notice to and securing the written consent of the Respondent, and subject to such other appropriate arrangements as may be necessary to preserve confidentiality.

13.     The foregoing General Objections apply to each and every specific Request and are incorporated by reference in each of the Objections and Responses set forth below, including the objections to the Definitions, which are made without waiver of, and subject to, these General Objections.

**Objections to Definitions:**

1.   The Respondent objects to the Definitions to the extent they purport to broaden the obligations imposed by the Federal Rules, the Local Rules, any other applicable rules, any applicable Court orders, or any discovery protocols agreed upon by the parties to the Action.

2.  The Respondent objects to the definition of "YOU" or "YOUR" on the grounds that they are vague, ambiguous, overly broad, and unduly burdensome.

3.  The Respondent objects to the definition of "DOCUMENT" to the extent it redefines terms that are commonly used or deviate from how those terms are defined and used in the Federal Rules, the Local Rules, any other applicable rules, any applicable Court orders, or any discovery protocols agreed upon by the parties to the Action.

4.  The Respondent objects to the definition of "REGARDING" on the grounds that it is vague, ambiguous, overly broad, and unduly burdensome.

5.  The Respondent objects to the definition of "PLANNED PARENTHOOD" on the grounds that it is vague, ambiguous, overly broad, and unduly burdensome.

1    **Request for Production No. 8:**

2        All communications with the U.S. House of Representatives Energy & Commerce

3    Committee, including but not limited to communications with the Select Investigative Panel.

4    **Response to Request for Production No. 8:**

5        The Respondent objects to this Request on the grounds that it is vague, ambiguous, overly

6    broad, and unduly burdensome, particularly with respect to the terms "All communications" and

7    "including but not limited to." The Respondent further objects to this Request as overly broad and

8    unduly burdensome as it includes no limitation as to time or subject matter. The Respondent also

9    objects to this Request as seeking documents that are subject to a right of privacy and/or privilege,

10   immunity, or obligation of confidentiality, including, without limitation, the attorney-client privilege,

11   the attorney work-product doctrine, the rules and practices of the Select Investigative Panel of the

12   Committee of Energy and Commerce, or any other legally recognized privilege, immunity,

13   exemption, or protection against disclosure.

14   **Request for Production No. 10:**

15       The transcript of any deposition or interview taken by the U.S. House of Representatives

16   Energy & Commerce Committee (including the Select Investigative Panel) or the U.S. Senate

17   Judiciary Committee.

18   **Response to Request for Production No. 10:**

19       The Respondent objects to this Request on the grounds that it is vague, ambiguous, overly

20   broad, and unduly burdensome, particularly with respect to the terms "any deposition or interview"

21   and "taken." The Respondent further objects to this Request as overly broad and unduly burdensome

22   as it includes no limitation as to time or subject matter. The Respondent also objects to this Request

23   as seeking documents that are subject to a right of privacy and/or privilege, immunity, or obligation

24   of confidentiality, including, without limitation, the attorney-client privilege, the attorney work-

25   product doctrine, the rules and practices of the Select Investigative Panel of the Committee of Energy

26   and Commerce, or any other legally recognized privilege, immunity, exemption, or protection against

27   disclosure.

28

**CMP'S CONTENTIONS**

The underlying action from which the present document subpoena emanates concerns generally whether CMP smeared and defamed the Plaintiffs by alleging that they were illegally selling fetal tissue for profit. In their complaint, the Plaintiffs allege that they have "never engaged in—or agreed to engage in—any unlawful or improper activity," Ex. 1, FAC ¶ 94, and "Planned Parenthood affiliates who have facilitated fetal tissue donation programs have done so in full compliance with all applicable federal and state law," FAC ¶ 45, but Plaintiffs allege injury from CMP's "fraudulent and defamatory campaign" suggesting otherwise, FAC ¶ 113, and that "[t]his action is brought . . . to recover damages for the ongoing harm to Planned Parenthood emanating from the video smear campaign." FAC ¶ 12; *cf.* FAC ¶ 63 (referring to "the posting of the first defamatory video and public statement"). Indeed, in opposing a similar motion to compel brought against them, the Plaintiffs have stated: "Plaintiffs have objected . . . to the documents in Defendants' [] motion *not* because the falsity of the smear campaign is irrelevant. . . ." Dkt. 374-5, 2:11-14, in N.D. Cal Case No. 3:16-CV-00236 (emphasis added).

Conversely, CMP can defeat the Plaintiffs' claims by showing that the proximate cause of the Plaintiffs' damages was not anything CMP did, but rather the Plaintiffs' own wrongdoing. *See Food Lion, Inc. v. Capital Cities/ABC, Inc.*, 964 F. Supp. 956, 963 (M.D.N.C. 1997). In addition, showing that the Plaintiffs' fetal tissue programs were generally violative of federal and state law will support CMP's affirmative defenses of unclean hands, public policy (with respect to the contract claims), and Pen. Code § 633.5, and provide impeachment evidence. *See generally Pom Wonderful LLC v. Welch Foods, Inc.*, 737 F. Supp. 2d 1105, 1110 (C.D. Cal. 2010) (unclean hands); *United States v. Northrop Corp.*, 59 F.3d 953, 958 (9th Cir. 1995) (public policy); *Newsome v. Penske Truck Leasing Corp.*, 437 F. Supp. 2d 431, 436 (D. Md. 2006) (impeachment).

Via this document subpoena, CMP seeks information that Nucatola provided to the U.S. House of Representatives, Energy & Commerce Committee. Nucatola is a former employee of one of the Plaintiffs who was investigated by CMP as part of its investigative journalism study into illegal fetal tissue procurement practices. On July 14, 2015, CMP published the first installment of its investigative journalism project—a video and series of documents featuring an interview with

1  Nucatola. The next day, July 15, 2015, the U.S. House of Representatives Energy and Commerce

2  Committee and the House Judiciary Committee began investigations into illegal fetal tissue

3  procurement practices. Two weeks later, on August 14, 2015, the U.S. House of Representatives

4  Oversight and Government Reform Committee began its own investigation. On October 7, 2015, the

5  U.S. House of Representatives voted to create the Select Investigative Panel within the Energy and

6  Commerce Committee. This Panel was created for the purpose of consolidating the various House

7  investigations into illegal fetal tissue procurement practices.

8      On December 30, 2016, the House Select Investigative Panel released its 427-page final

9  report. A copy of that Final Report is available online at this link: https://energycommerce.house.gov/

10 news/letter/select-investigative-panel-final-report/. The Final Report documents extensive evidence of

11 criminal, unlawful, and unethical acts by abortion providers and fetal tissue procurement companies,

12 such as:

13      1.  profiting from the sale of fetal organs;

14      2.  altering abortion procedures for financial gain;

15      3.  performing illegal partial-birth abortions;

16      4.  killing newborns who survived attempted abortions;

17      5.  failing to obtain informed consent for fetal tissue donations;

18      6.  violating the Health Insurance Portability and Accountability Act of 1996 (HIPAA);

19      7.  violating federal regulations regarding Institutional Review Boards (IRBs);

20      8.  fraudulent overbilling practices; and

21      9.  destroying documents that were the subject of congressional inquiries.

22      The Select Panel also issued numerous criminal and regulatory referrals to federal, state, and

23 local law enforcement entities, including for several abortion providers and fetal tissue procurement

24 companies. The Final Report noted that its findings were consistent with CMP's public videos, which

25 were "the impetus for" the investigation. House Report at 356. The status of most of these referrals

26 is necessarily unknown because law enforcement refuse to comment on, or even confirm, active

27 investigations. However, in a rare move, the U.S. Department of Justice has confirmed that it has an

28 ongoing and active investigation based on the referrals made to it. *See* Letter from Assistant Attorney

9

1   General Stephen E. Boyd, U.S. Department of Justice, to Hon. Charles E. Grassley, Chairman, Senate

2   Judiciary Committee (Dec. 7, 2017), http://cdn.cnn.com/

3   cnn/2017/images/12/07/pp.pdf.

4          Importantly, one investigation flowing from the House referrals has concluded. On December

5   8, 2017, two companies DV Biologics and DaVinci Biosciences—referred by the House to the

6   Orange County District Attorneys' Office for prosecution (House Report at 73-78)—admitted guilt

7   in a $7.8 million settlement with the OCDA. Those companies admitted to selling fetal body parts

8   obtained from a Plaintiff for profit. The OCDA's office credited CMP's investigative journalism with

9   prompting the case, stating "In September 2015, the OCDA opened an investigation into DaVinci

10  Biosciences and DV Biologics after a complaint was submitted by the Center for Medical Progress

11  regarding the illegal sale of aborted fetal tissue by both companies." Press Release, Orange County

12  District Attorney, OCDA Obtains $7.8 Million Settlement and Admission of Liability in Lawsuit

13  Against Two Companies Who Unlawfully Sold Fetal Tissue and Cells for Profit, (Dec. 8, 2017),

14  http://orangecountyda.org/civica/press/display.asp?layout=2&

15  Entry=5406.

16         Thus, in light of the fact that this case is about whether the Plaintiffs were illegally selling

17  fetal tissue for profit, and in light of the fact that a year-long Congressional investigation determined

18  that they did, Nucatola cannot (and does not) argue that the documents are not relevant, instead

19  relying on burdensome and overbreadth objections.

20         After CMP attempted to get documents related to Nucatola, the Plaintiffs informed CMP that:

21  "Dr. Nucatola is separately represented by Gibson Dunn. If there are documents that you have reason

22  to believe she has within her personal custody relevant to this case, a subpoena should be served on

23  her counsel, Michael Bopp." Ex. 2. As a result, on October 23, 2018, CMP emailed a third party

24  subpoena to Mr. Bopp, and at the same time asked whether he would accept service. Ex. 3. On

25  November 2, 2018, Mr. Bopp confirmed that he accepted service. Ex. 4. On November 12, 2018, Mr.

26  Bopp stated that "[w]e are in the process of collecting and reviewing documents, which is going to

27  take some more time. Hence, we are asking if you would extend the return date to Friday, December

28  7th. That would give us time to finish our work and consult with our client." Ex. 5. CMP agreed to

1    the extension with the understanding that Nucatola would be producing documents.

2        On December 7, 2018, counsel served Nucatola's responses and objections. Ex. 6. With

3    respect to eight of the document requests, Nucatola stated that she did not possess any documents;

4    with respect to two, she refused to produce them. CMP was confused by the lack of production, and

5    wrote back to confirm that nothing would be produced. In response, counsel for Nucatola responded

6    with the following statement:

7            As you know, we are not a party to this case. Rather than serve
8            objections outright based on our non-party status and the burden of
             this request, we went to the effort to assess whether we had
9            responsive, producible materials given our understanding of your
             request. We appreciate you giving us the time to look through files
10           so that we could meaningfully consider your requests and evaluate
             them. Please just let us know if you would like to discuss further.
11

12   Ex. 7.

13       On December 11, 2018, CMP sent its first meet and confer letter. Ex. 8. Counsel for Nucatola

14   responded to it on December 14, 2018. In that letter, counsel wrote:

15           Request Nos. 8 and 10 are particularly objectionable. Both Requests
             seek broad swaths of documents—"[a]ll communications" and "any
16           deposition or interview"—and are unbounded by subject matter
             and/or time. Courts regularly find that such requests to a non-party
17           are improperly overbroad and unduly burdensome. *See, e.g., HM
             Electronics, Inc. v. R.F. Technologies, Inc.*, No. 12-cv-2884, 2014
18           WL 12059002, at *5 (S.D. Cal. July 3, 2014) ("Additionally, the
             Court finds this request to be overbroad, as it is not limited in time");
19           *Karnazes v. Cty. of San Mateo*, No. 9-767, 2010 WL 1910522, at *5
20           (N.D. Cal. May 11, 2010) (limiting requests that did not provide a
             time limit); *In re Subpoena Duces Tecum to AOL*, LLC, 550 F. Supp.
21           2d 606, 612 (E.D. Va. 2008) (quashing a third-party subpoena as
             "overbroad because it does not limit the [documents] requested to
22           those containing subject matter relevant to the underlying action");
             *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 637–38 (C.D. Cal. 2005)
23           (finding that the third-party subpoena imposed an undue burden and
24           quashing it for that reason). In addition, the definition of "you" or
             "your" to include "agents, manager, servants, employees, workers,
25           consultants, and attorneys," Subpoena at 1, is extremely broad and
             further attempts to force the burden of discovery on even more
26           nonparties.

27

28

1  Ex. 9.[1]

2  The parties subsequently exchanged emails on December 17 and 20, 2018. Ex. 10. In CMP's

3  December 20 email, it asked what "compromise are you willing to make to avoid a motion to

4  compel." CMP never received a response. As a result, CMP followed up with a telephone call on

5  January 7 and another on January 8, 2019, wherein counsel engaged in a telephonic meet and confer

6  pursuant to C.D. Cal. L.R. 37-1. On the January 8, 2019 call, counsel for Nucatola enunciated an

7  objection to producing all documents within Nucatola's *control*, but within the *possession* of her

8  agents, and explained that Dr. Nucatola should not have to reach out to numerous third parties

9  searching for documents, and provided Planned Parenthood as an example of one such third party.

10  CMP agreed to try to limit the burden, and has agreed to limit the custodians to Nucatola herself and

11  her counsel Gibson Dunn. CMP also agrees to limit the time period to July 13, 2015 through

12  December 31, 2016. On January 10, counsel exchanged additional emails in an attempt to narrow

13  and resolve the dispute. Those discussions did not resolve the dispute. Ex. 11.

14  Nucatola's present overbreadth and burdensome objections are without merit. In the non-

15  party subpoena context, "[a]n evaluation of undue burden requires the court to weigh the burden to

16  the subpoenaed party against the value of the information to the serving party. Whether a subpoena

17  imposes an 'undue burden' depends upon such factors as relevance, the need of the party for the

18  documents, the breadth of the document request, the time period covered by it, the particularity with

19  which the documents are described and the burden imposed." *Travelers Indem. Co. v. Metro. Life*

20  *Ins. Co.*, 228 F.R.D. 111, 113 (D. Conn. 2005) (quotation marks omitted). Also, generally to

21  substantiate a generic burden objection, the opposing party must detail the burden "in terms of time

22  [and] money." *In re Toys R Us-Delaware, Inc. Fair & Accurate Credit Transactions Act (FACTA)*

23  *Litig.*, No. ML 08-1980 MMM (FMOx), 2010 WL 4942645, at *6 (C.D. Cal. July 29, 2010) (ordering

24  production: "defendant acknowledges that it has not quantified its burden but argues that providing

25  such quantification would be an additional burden that defendant would have to shoulder.")

26  _____

27  [1] In light of Nucatola's narrowing of her objections in the meet and confer correspondence, CMP focuses primarily on this issue. *See DIRECTV, Inc. v. Puccinelli*, 224 F.R.D. 677, 681 n.8 (D. Kan.

28  2004) ("[O]bjections asserted in a party's initial response to discovery requests but not reasserted in response to a motion to compel are waived").

12

1  (quotation marks, brackets, and ellipses omitted); *see also Horizon Holdings, L.L.C. v. Genmar*

2  *Holdings, Inc.*, 209 F.R.D. 208, 213 (D. Kan. 2002) (same).

3  Finally, "[w]hile discovery is a valuable right and should not be unnecessarily restricted, the

4  'necessary' restriction may be broader when a nonparty is the target of discovery." *Dart Indus. Co.*

5  *v. Westwood Chem. Co.*, 649 F.2d 646, 649 (9th Cir. 1980) (citation omitted). Therefore, "a court

6  may restrict discovery from non-parties on th[e] basis" that the information "can more easily and

7  inexpensively be obtained from the opposing party," but "it is not required to do so." *McCall v. State*

8  *Farm Mut. Auto. Ins. Co.*, No. 216-cv-01058-JAD-GWF, 2017 WL 3174914, at *6 (D. Nev. July 26,

9  2017). The fact that documents are in the possession of the opposing party does *not* create a *per se*

10  rule that subpoenaing them from third parties is unduly burdensome. *See Compass N. Indus. LLC v.*

11  *Taylor*, No. CV-14-00034-PHX-GMS, 2014 WL 2779175, at *2 (D. Ariz. June 19, 2014). Further,

12  to invoke this special protection, the non-party must definitively establish that the documents are in

13  the possession of named parties. *See id.* (Denying motion to quash: "The possibility that some of the

14  documents sought are also available from Defendants does not make the subpoena improper.

15  Defendants are equivocal on this point and seem to concede that not all of the documents can be

16  obtained from them.").

17  Here, the limited documents sought are directly relevant to numerous issues in this case, both

18  to the Plaintiffs' case, and CMP's affirmative defenses. With respect to the transcript(s) of Nucatola's

19  depositions/interviews, there can be no meaningful burden argument. With respect to the

20  communications with the Energy & Commerce committee, it is unclear how many there would be,

21  as Nucatola has yet to substantiate her burden objection. But it strains credulity that it would be

22  unduly burdensome for Nucatola to search her personal email accounts and for her counsel to search

23  their "Nucatola" file for responsive documents.

24  ### DR. NUCATOLA'S CONTENTIONS

25  ***The Underlying Lawsuit.***   Although Defendants dedicate a substantial portion of their

26  contentions to detailing Congressional oversight, they have glaringly omitted the core of the parties'

27  dispute.  The underlying lawsuit centers on Defendants' conduct in devising and executing a plan to

28  defraud Plaintiffs. *See, e.g.*, Ex. 1 ¶ 14. Among other acts, Plaintiffs allege Defendants (i) established

13

1    false entities; (ii) formed and promoted as legitimate a "tissue procurement company" that

2    Defendants relied on to gain and exploit the confidence of Plaintiffs' staff and others; (iii) created

3    fictitious materials to present the company as legitimate; (iv) used fake identities, including fake

4    driver's licenses, to improperly gain access to private meetings of Planned Parenthood and others;

5    (v) signed confidentiality and non-disclosure agreements without any intention of complying with

6    them; and (vi) surreptitiously took video and audio recordings of meeting attendees and other

7    conversations without their knowledge or consent. *See id.* ¶¶ 58–62, 68, 85–88.

8         After misleadingly editing the fraudulently obtained footage, Defendants released a series of

9    videos proclaiming that Planned Parenthood engaged in the "illegal trafficking of aborted fetal parts"

10   and that it committed "atrocities against humanity." *See id.* ¶¶ 125–26. These deceptively edited

11   videos wreaked substantial disruption:  Plaintiffs had to increase physical and web security

12   across-the-board, experienced a nine-fold increase in incidents of harassment, were the victim of

13   attempted arsons, and, tragically, three people were killed and nine others were injured at an attack

14   on a Planned Parenthood health center in Colorado Springs. *Id.* ¶ 142. As a result of Defendants'

15   actions, individuals were incited to threaten doctors' lives. *Id.* ¶ 130. In response to threats like these

16   and other actions resulting from Defendants' videos, Plaintiffs expended significant resources to

17   protect their staff and operations. *Id.* ¶ 142. They brought the underlying suit to attempt to recover

18   from Defendants to help mitigate some of the irreversible damage that they caused. *Id.* ¶ 147.

19        Dr. Nucatola is not a party to the suit, is no longer an employee of one of the Plaintiffs, and

20   no longer has access to any of her files or emails related to said employment. *See* Ex. 9; Decl. of

21   Jennifer K. Bracht in Opp'n to Mot. to Compel ("Bracht Decl.") ¶ 5.

22        ***Procedural Impropriety.***  As a threshold matter, the Central District of California is not the

23   proper venue for Defendants' motion.   Counsel for Dr. Nucatola alerted Defendants to this

24   impropriety, but—despite the clear text of the federal rule and controlling case law in the Central

25   District—Defendants refused to file this motion in the required district. *See* Ex. 14.

26        Motions to compel discovery from non-parties are to be "made in the court where the

27   discovery is or will be taken." Fed. R. Civ. P. 37(a)(2). The Defendants, of their own accord, noticed

28   the return for the subpoena to be a location in Washington, D.C., making the "court where the

1  discovery is or will be taken" the District Court for the District of Columbia. *See* Ex. 3. Because

2  Defendants elected that the place of compliance as Washington, D.C., this motion must be filed in

3  that district. Accordingly, Defendants' motion should be denied. *See, e.g.*, *In re Am. Medical Sys.,*

4  *Inc. Pelvic Repair Sys. Prod. Liab. Litig.*, No. 2:14-cv-29705, 2016 WL 756485, at *2 (D. W.Va.

5  Feb. 25, 2016) ("In this case, the subpoenas served on Mr. Bhojani and his company were issued by

6  this court, but the depositions and document production were to occur in Orlando, Florida.

7  Consequently, the district of production and compliance was the Middle District of Florida, and a

8  motion to compel or for contempt would normally be filed in that district court."); *Roca Labs, Inc.*

9  *v. Consumer Op. Corp.*, No. 8:14-cv-2096, 2015 WL 12939597, at *1 (M.D. Fla. June 17, 2015)

10 (denying two motions to compel where the subpoenas required compliance in Palo Alto, California

11 and Phoenix, Arizona, rather than the Middle District of Florida).

12      Defendants claim that there is a "split of authority" on whether the venue for this motion is

13 "based on 'the location of the subpoenaed person or entity'—not the location listed on the subpoena."

14 Ex. 14 [J. Trissell email to J. Bracht dated Jan. 13, 2019] (quoting *Raap v. Brier & Thorn, Inc.*, No.

15 17-mc-3001, 2017 WL 2462823, at *3 (C.D. Ill. July 7, 2017)). However, the procedural posture in

16 *Raap* and the two cases cited within it that Defendants assert purportedly create this "split of

17 authority" are all inapposite (and non-controlling): in all of those cases, ***a non-party*** filed a motion

18 to ***quash***. *See id.* at *2, *5. This distinction is imperative because, in those circumstances, the courts

19 were considering the language upon which Defendants rely—"the district where compliance is

20 required"—in an entirely different context and under the federal rule regarding "Quashing or

21 Modifying a Subpoena." *See id.*; Fed. R. Civ. P. 45(d)(3) (requiring or permitting courts to quash or

22 modify subpoenas that meet one of the delineated criteria). Thus, the authority cited by Defendants

23 has no application here.

24      Rule 37(a)(2), on the other hand, directly pertains to these circumstances: it provides that,

25 for "order[s] compelling disclosure or discovery," a "motion for an order to a nonparty must be made

26 in the court where the discovery is or will be taken." Fed. R. Civ. P. 37(a)(1)–(2). However, even

27 under the "district where compliance is required" standard, this court has held that it lacks jurisdiction

28 to resolve a motion to compel when the subpoena requires compliance in another district. *See, e.g.*,

1   *Chambers v. Whirlpool*, No. 11-1733, 2016 WL 9451360, at *3 (C.D. Cal. Aug. 12, 2016). In

2   *Chambers*, addressing a situation identical to the one here, this court ruled that it "lacks jurisdiction

3   to compel Bandas [a non-party] to comply with the subpoena because the subpoena requires

4   compliance in the Southern District of Texas, and a motion to compel production pursuant to a

5   third-party subpoena is to be filed in the district where compliance is required." *Id.* (citations and

6   internal quotation marks omitted). The subpoena issued to the non-party noticed a return location of

7   Corpus Christi, Texas. Decl. of Vaughn M. Greenwalt in Supp. of Hanigan's Mot. to Quash Ex. D.

8   at 49, ECF No. 271-11. As these facts mirror those in *Chambers*, Defendants' motion must be filed

9   in the District of Columbia—the district where compliance is required, as specified in the Subpoena.

10      ***Lack of Merit.*** Although this Court should not reach the merits of Defendants' motion, in

11  the event it does, the motion should be denied. As Dr. Nucatola raised in her written objections (*see*

12  Ex. 6), the Requests are overly broad, unduly burdensome, and implicate the attorney-client privilege,

13  the attorney work-product doctrine, and seek violations of the rules and practices of the U.S. House

14  of Representatives Committee on Energy and Commerce, including the Select Investigative Panel

15  (collectively, the "Committee"). Moreover, discovery from a non-party is particularly improper

16  where Defendants have not sought to obtain the material from the proper party; here, the Committee

17  itself. *See* Fed. R. Civ. P. 26(b)(2)(C) (discovery must be restricted if it "can be obtained from some

18  other source that is more convenient, less burdensome or less expensive; or the party seeking

19  discovery has had ample opportunity to obtain the information by discovery in the action").

20      The Defendants cannot bypass—nor ask a non-party to violate—the Committee's rules by

21  seeking such materials from a third-party.

22      **1. Defendants' Mischaracterization of the Record**

23      Defendants' recitation of the sequence of events leading to the filing of this motion

24  mischaracterizes and omits important context and necessitates correction, in at least two material

25  respects.

26      *First*, Defendants' inaccurately attempt to characterize written correspondence in December

27  2018 as satisfying the requirement in Local Rule 37.1 that parties must engage in a good faith meet

28  and confer prior to filing a motion to compel. This Court's local rules require the parties to "confer

1  in a good faith effort [which] . . . may take place telephonically." L.R. 37-1.[2]  The local rules also

2  place "the responsibility of counsel for ***the moving party*** to arrange for this conference." *Id.*

3  (emphasis added).  Yet despite multiple offers from Dr. Nucatola's counsel to meet and confer (*see*

4  Exs. 9–10), Defendants made no attempt to comply with this rule until the eleventh hour, just one

5  week before the discovery cut-off in the case. *See* Ex. 11; Bracht Decl. ¶¶ 2–3.

6        Specifically, after Dr. Nucatola served her responses and objections substantively responding

7  to 8 of the 10 Requests, Defendants sent a written letter. *See* Ex. 8.  Although counsel now

8  characterizes it as a meet and confer letter, in the letter, Defendants never sought a meeting or

9  opportunity to discuss its objections with Dr. Nucatola.  Nevertheless, Dr. Nucatola responded in

10  good faith within three days, on December 14, 2018.  In that letter, Dr. Nucatola made several

11  references to the fact that Defendants had not requested to meet and confer. *See, e.g.*, Ex. 9 at 1

12  ("you have not even requested a meet and confer").  Alerted to this issue, Defendants made no effort

13  to engage in the meet and confer process required by the rules.  Defendants instead jumped to the

14  premature conclusion that "we are now engaged in an escalating exchange of case authority and not

15  discussing compromises or a narrowed scope of production" and that "it seems clear to us that any

16  further meet and confer efforts would not be productive." Ex. 10 (D. Wilson email to P. Jura dated

17  Dec. 17, 2018).  Dr. Nucatola again reiterated that Defendants had so far "disregarded our multiple

18  offers to have a discussion" and that "moving to compel at this stage would be premature and a clear

19  violation of the rules." *Id.* (email from P. Jura to D. Wilson dated Dec. 20, 2018).

20        Ignoring Dr. Nucatola's offer to meet and confer, Defendants then issued an ultimatum:

21  "[T]he motion cut-off date is upon us.  What final compromise are you willing to make to avoid a

22  motion to compel?" *Id.* (email from D. Wilson to P. Jura dated Dec. 20, 2018).  Defendants'

23  unilateral demand that Dr. Nucatola make "compromises" when she had raised valid and unanswered

24  objections and Defendants had ignored the multiple offers from her counsel to get on the phone was

25  wholly improper.  Such an unreasonable position surely did not require Dr. Nucatola to respond with

---

26       [2]    The local rules for the District of Columbia similarly require that a good-faith

27  discussion take place prior to filing any non-dispositive motion. Rules of the United States District
    Court  for  the  District  of  Columbia  (June  22,  2018)  Rule  7(m),  available  at:

28  https://www.dcd.uscourts.gov/sites/dcd/files/Local_Rules_June_22_2018.pdf.

1    a proposed compromise.  Despite the existence of a supposed "motion cut-off date," Dr. Nucatola

2    did not hear anything further from Defendants until less than a week ago, when Defendants finally

3    called Dr. Nucatola's counsel on January 7, 2019 to initiate a proper meet and confer on January 8,

4    2019.  Bracht Decl. ¶ 3.  As Defendants then explained during the meet and confer, it was mere days

5    before the cutoff set by the underlying court of January 14, 2019 for filing motions to compel.  *Id.*

6    ¶ 9.

7         *Second*, Defendants' characterization of the telephonic meet and confer is misleading and

8    inaccurate.  Defendants state that the parties "agreed to limit the custodians to [Dr.] Nucatola herself

9    and her counsel Gibson Dunn." *See supra* p. 12:10–11.[3]  This is patently false, which more than one

10   witness can confirm.  Bracht Decl. ¶¶ 4, 6, 8.  During the telephonic meet and confer, Dr. Nucatola's

11   counsel explained, among many other things, that, as an example of overbreath and burden, the

12   definition of "YOU" and "YOUR" in the subpoena purports to include all third parties feasibly acting

13   on Dr. Nucatola's behalf.  *Id.* ¶ 5.  Defendants acknowledged this objection and agreed to limit the

14   custodian for Request Nos. 8 and 10 to Dr. Nucatola herself.  *Id.* ¶¶ 6–7.  Based on this

15   understanding, counsel agreed to ask Dr. Nucatola to search her personal emails and computer for

16   responsive documents to these Requests, limiting the timeframe for Request No. 8 to July 13, 2015

17   through December 31, 2016.[4]  *Id.* ¶ 8.

18        Although all counsel agreed during the meet and confer that Dr. Nucatola's counsel would

19

20   [3]     To the extent Defendants argue that Dr. Nucatola has waived any other objections,
     *see supra* p. 12 n.1, this is also incorrect.  In fact, Dr. Nucatola's email summarizing the meet and

21   confer notes as much (*see* Ex. 11 [P. Jura email to J. Trissell dated Jan. 8, 2019]; Bracht Decl. ¶ 12–
     13) and Defendants' offered support, *DIRECTV, Inc. v. Puccinelli*, *see supra id.*, very clearly

22   discusses waiver in the context of a response to a motion to compel.  Reaching a compromise during
     a telephone meet and confer and not addressing any further objections after that point not only

23   comports with the law, but is common sense.

24   [4]     Defendants' assertion that Dr. Nucatola's single request for a short extension and her
     written responses and objections prove that Dr. Nucatola intended to produce documents, then

25   "refused to produce" them, *see supra* p. 11:4 is flatly untrue.  Dr. Nucatola requested a short, routine
     extension out of professional courtesy to complete an assessment and search of her files so that she

26   could conclude whether she possessed any responsive documents.  She then responded substantively
     to eight out of ten of the Requests, and objected to searching for documents to Request Nos. 8 and

27   10 for the reasons articulated.  In discussing these Requests with Defendants during the January 8
     meet and confer, Dr. Nucatola agreed to conduct searches of her personal email and computer, and

28   did not identify any responsive documents.  *See* Ex. 13; Bracht Decl. ¶¶ 6–8.

1  send Defendants a summary of what was agreed to, Defendants' counsel instead sent a proposed

2  summary that distorted the agreement reached by the parties. *Id.* ¶ 10; Ex. 11 (J. Trissell email to P.

3  Jura dated Jan. 8, 2019) (reflecting corrections and summary inserted by P. Jura in Jan. 8, 2019 email

4  from P. Jura to J. Trissell).  Despite earlier agreeing to limit the disputed Requests to Dr. Nucatola's

5  files alone, Defendants attempted to re-introduce searching the documents of a third party acting on

6  Dr. Nucatola's behalf—in this case, Dr. Nucatola's counsel, Gibson Dunn.  *See* Bracht Decl. ¶ 14.

7  While Defendants' correspondence posits that there may have been a misunderstanding during the

8  telephonic meet and confer, Dr. Nucatola reiterated that she never agreed to request that third parties

9  search their documents, particularly in light of Dr. Nucatola's non-party status and the overarching

10  burden and overbreadth of the Requests.  Ex. 11 (J. Bracht email to J. Trissell dated Jan. 10, 2019).

11  Dr. Nucatola reiterated that she would conduct the additional searches of her personal files as the

12  parties had agreed, and she did so.  Bracht Decl. ¶ 17; Ex. 13.  Defendants' motion followed.[5]

13  ## 2. Defendants' Requests Are Overbroad And Violate Settled Law

14  Defendants' responses to Dr. Nucatola's objections to Request Nos. 8 and 10 have no merit.

15  As they are well-aware, Dr. Nucatola is a non-party to the action and is not currently employed by

16  the Planned Parenthood Federation of America or any other plaintiff in the underlying litigation. *See*

17  Ex. 9; Bracht Decl. ¶ 5.  Courts routinely limit discovery based on privilege, relevancy, and

18  proportionality, particularly when the discovery is sought from a non-party.  *See Dart*, 649 F.2d at

19  649 (the "restriction [on discovery] may be broader when a nonparty is the target of discovery"); *see*

20  *also Micron Tech., Inc. v. Tessera, Inc.*, No. 06-80093, 2006 WL 1646132, at *2 (N.D. Cal. June 14,

21  2006) ("Although Rule 26(b) and Rule 45 apply equally to discovery of nonparties, the fact of

22  nonparty status may be considered by the court in weighing the burden imposed in the

23  circumstances.").  "Nonparty witnesses are powerless to control the scope of litigation and discovery,

24  ---

25  [5]   The local rules provide that, in preparing a joint filing, the opposing party is supposed to be given seven days to respond to the moving party's material.  L.R. 37-2.2.  Defendants did not even attempt to call Dr. Nucatola's counsel to have a meet and confer until the date of their deadline to provide their half of the joint motion, which they did not provide on that date.  Instead, Dr. Nucatola received their contentions on the afternoon of Thursday, January 10, with a deadline to file the motion on Monday, January 14.  This required Dr. Nucatola and her counsel to work under unfair and rushed circumstances over a weekend.  This is yet another example of Defendants imposing an improper burden on a non-party.  Defendants' abusive discovery tactics should not be tolerated.

1  and should not be forced to subsidize an unreasonable share of the costs of a litigation to which they

2  are not a party." *U.S. v. Columbia Broadcasting Sys.*, 666 F.2d at 371.

### a. Request No. 8

4  Defendants' challenge to Request No. 8 is moot because, despite the fact that Defendants

5  sought to improperly recharacterize the agreement reached through the meet and confer process,

6  Dr. Nucatola nevertheless held up her end of the bargain and went through the additional effort of

7  searching through her personal files for responsive documents. Her counsel responded to Defendants

8  by January 11, 2019 confirming that she conducted the agreed-upon searches and did not identify

9  any responsive documents. Ex. 13; Bracht Decl. ¶ 17.

### b. Request No. 10

11  Request No. 10 seeks "the transcript of any deposition or interview taken" by the Committee

12  or the U.S. Senate Judiciary Committee." As written, this Request is highly objectionable and overly

13  broad. Ex. 6 at 5, 11 (among other grounds, objecting to Request No. 10 on the basis that it includes

14  no limitation as to time or subject matter).[6] As narrowed by Defendants during the January 8 meet

15  and confer, Bracht Decl. ¶ 7, it is clear that Defendants should not be pursuing this document from

16  Dr. Nucatola.

17  Defendants cite a single out-of-circuit case to support their proposition that it is not "*per se*"

18  unduly burdensome to require production of material from a non-party if a party may also possess

19  the documents sought, and that "to invoke this special [*per se*] protection, the non-party must

20  definitively establish that the documents are in the possession of named parties." *See supra* p.

21  13:12–13 (citing *Compass N. Indus. LLC v. Taylor*, No. CV-14-00034-PHX-GMS, 2014 WL

22  2779175, at *2 (D. Ariz. June 19, 2014)). But *Compass* did not hold that such a rule existed, and

23  Defendants offer *no other legal support* for this contention.

24  Instead, the guiding legal principle is that non-party discovery should be limited and must be

---

26  [6]   Indeed, as an additional example of the ambiguity and overbreadth in Request No. 10, it references a generic "Select Investigative Panel" without further specification. This non-specific phrase, combined with the Request's lack of time or subject matter limitations, renders Request No, 10 vague, ambiguous, and overbroad. Dr. Nucatola interprets Request No. 10 as seeking transcripts taken by the Select Panel created by H. Res. 461 on October 7, 2015. *See also supra* p. 9:22–24 (Defendants' discussion of the Select Panel).

1   carefully circumscribed to avoid burdening the non-party.  *See Dart*, 649 F.2d at 649; *Columbia*

2   *Broadcasting*, 666 F.2d at 371; *see also Amini Innovation Corp. v. McFerran Home Furnishings,*

3   *Inc.*, 300 F.R.D. 406, 410 (C.D. Cal. 2014) (citing *Brown v. City of Syracuse*, 648 F. Supp. 2d 461,

4   466 (N.D.N.Y. 2009) (when balancing hardships between requesting party and non-party, court

5   should consider whether there are other sources for obtaining the material.)).  Here, there is a simple

6   solution to Defendants' request for any deposition or interview transcripts "taken by" the Committee

7   or the Senate Judiciary Committee, Ex. 3 at 2:18–19 (Request No. 10):  the House or Senate

8   committees themselves.  Because the House and Senate Committees would not only possess any

9   transcripts, but are in the best position to identify whether they can be produced and to provide a

10  final version of them, it is improper for Defendants to seek that same documents from a non-party or

11  her counsel.  That Defendants have not done so does not give them license to burden Dr. Nucatola

12  with this Request.

13      This revelation is particularly relevant given that the rules of the Committee protect the

14  transcript from disclosure absent a vote of the majority of the members of the Committee.  The Select

15  Investigative Panel of the House Energy and Commerce Committee, created by H. Res. 461,

16  expressly applies "Rule XI and the rules of the Committee on Energy and Commerce" to it.  Ex. 15

17  (H.R. Res. 461, 114th Cong. § 4).  Rule XI clause 3(g)(1)(F) of the House Rules, in turn, states that

18  "no member of the staff or outside counsel may make public, ***unless approved by an affirmative vote***

19  ***of a majority of the members of the committee***, any information, document, or other material that is

20  confidential, derived from executive session, or classified and that is obtained during the course of

21  employment with the committee."  Ex. 16 (Rules of the House of Representatives, 114th Congress)

22  (emphasis added).  Thus, the materials of the Committee may not be made public absent a vote of a

23  majority of the committee members to authorize it.  Defendants' attempt to compel disclosure of

24  materials protected by these rules is, at best, an attempt to circumvent the proper procedural avenue

25  by which to obtain this information.  This flouts both the Committee rules and well-settled principles

26  of non-party discovery.

27      Defendants also contend that there is "no meaningful burden argument" against requiring

28  Dr. Nucatola to require her legal counsel to search their files for the requested (and protected)

21

1    information.   They are mistaken.   Attorney work product, attorney files, and attorney client

2    communications are among the most protected information.  *See, e.g.*, *United States v. Bauer*, 132

3    F.3d 504, 510 (9th Cir. 1997) (noting that "the attorney-client privilege is, perhaps, the most sacred

4    of all legally recognized privileges, and its preservation is essential to the just and orderly operation

5    of our legal system"); *Handgards, Inc. v. Johnson & Johnson*, 413 F. Supp. 926, 930 (N.D. Cal.

6    1976) ("The [work product] doctrine assures an attorney that his private files shall remain free from

7    intrusions of opposing counsel in the absence of special circumstances.") (citing *Hickman v. Taylor*,

8    329 U.S. 495 (1947)).  Defendants are not only unfairly burdening Dr. Nucatola, a non-party, with

9    their request to search her files for information they should have sought from other sources, but

10   now—in breach of their meet and confer agreement—Defendants are insisting that Dr. Nucatola's

11   counsel search its files for what they presume is "a single specific document." *See* Ex. 11 (J. Trissell

12   email to P. Jura dated Jan. 10, 2019).  This unreasonable position far exceeds the type of burden that

13   can be imposed through third-party discovery. *See* Fed. R. Civ. P. 26(b)(1) ("[p]arties may obtain

14   discovery regarding any *nonprivileged* matter that is relevant . . . and *proportional to the needs of*

15   *the case*, considering . . . whether the burden or expense of the proposed discovery outweighs its

16   likely benefit.") (emphases added).

17         Defendants' demand is particularly overbroad considering that, at this point, Dr. Nucatola has

18   conducted searches through her personal computer and email for all Requests and has not identified

19   any responsive documents.  Further, Gibson Dunn represents a number of clients before Congress,

20   including the House Energy & Commerce Committee and the Senate Judiciary Committee.

21   Defendants' correspondence makes clear that they are asking for the "transcript of a congressional

22   interview (either of Dr. Nucatola or anybody else)." Ex. 11 (J. Trissell email to P. Jura dated Jan. 8,

23   2019).  Seeking a search through Gibson Dunn's files of material that potentially relates ***to other***

24   ***clients*** or could require Gibson Dunn to reveal privileged information, even in demanding that it

25   create a log, clearly infringes upon a number of legal privilege doctrines, and is, again, unduly

26   burdensome. *See* Fed. R. Civ. P. 26(b)(1) (listing as a factor for the permissible scope of discovery

27   "the burden or expense of the proposed discovery outweighs its likely benefit.").

28         In addition, Defendants assume that a search for the requested material would locate "a single

1   specific document" and "only take probably seconds to find and produce." Ex. 11 (J. Trissell email

2   to P. Jura dated Jan. 10, 2019). This is incorrect given the overbreadth of Request No. 10. To start,

3   Defendants' time period begins in July 2015, nearly three and a half years ago. Further, Defendants

4   do not limit the source(s) to search, which may include, for example:  emails contained in current

5   employees' Outlook accounts, any archived or back-ups of emails of current employees, any archived

6   or back-ups of emails of former employees, any files on any shared networks utilized either by

7   current or former employees, any files on the firm's document management system, any hard copy

8   files maintained by current employees, and any hard copy files archived and in off-site storage.

9   Conducting searches through all of these sources of information, which will likely yield a significant

10   amount of privileged material, to look for what Defendants concede to be a single document is unduly

11   burdensome. Defendants' request that Gibson Dunn undertake these searches—while knowing that

12   the proper avenue to obtain the document is through the Committee—should be denied.[7]

13   ***Conclusion.*** The Court should deny Defendants' motion outright because the federal rules

14   dictate that this motion be filed in the District Court for the District of Columbia. Defendants'

15   contentions also fail on several other key substantive points. Namely, Dr. Nucatola already searched

16   her *personal* email and computer, even after explaining that she does not conduct work from such

17   files, and responded that she did not identify any documents responsive to Request No. 8, so that

18   dispute is moot. As to Request No. 10, Dr. Nucatola likewise undertook the extra burden of searching

19   through her personal emails and computer and confirmed that she does not have any responsive

20   documents. Defendants' are now trying to manipulate this situation to force Dr. Nucatola's counsel

21   to search its files, which goes well beyond reason, especially when the requested documents should

22   be obtained from another source.

23

24

---

25   [7]         To the extent that Defendants' motion seeks to compel the production of materials on
    Request Nos. 8 and 10 as written, and not in accordance with the agreement reached during the
26   January 8 meet and confer that only Dr. Nucatola search her personal emails and computer for
    documents responsive to these two requests, this is improper. In this case, Dr. Nucatola reiterates all
27   of her objections to such an overly broad and burdensome request, *see* Ex. 6, particularly given that
    Defendants' are trying to retrade on the agreement reached during the meet and confer to now require
28   Gibson Dunn to conduct a search in response to Request Number 10. *See* Bracht Decl. ¶¶ 7, 8, 15.

1   Respectfully submitted,

2   January 14, 2019,

3

4

5   _____
    Charles S. LiMandri (CA Bar No. 110841)
6   Paul M. Jonna (CA Bar No. 265389)
    FREEDOM OF CONSCIENCE DEFENSE FUND
7   P.O. Box 9520
    Rancho Santa Fe, CA 92067
8   Tel:  (858) 759-9948
    Facsimile:  (858) 759-9938
9   cslimandri@limandri.com
    pjonna@limandri.com
10  *Attorneys for Defendants the Center for*
    *Medical Progress, BioMax Procurement*
11  *Services, LLC, and David Daleiden*

    _____
    Perlette M. Jura (CA Bar No. 242332)
    Jennifer K. Bracht (CA Bar No. 300385)
    GIBSON, DUNN & CRUTCHER LLP
    333 South Grand Avenue
    Los Angeles, CA 90071
    Tel: (213) 229-7121
    pjura@gibsondunn.com
    jbracht@gibsondunn.com
    *Attorneys for Non-Party Deborah Nucatola*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28